ROBERT D. ABERCROMBIE and BARBARA J. ABERCROMBIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abercrombie v. Commissioner
Docket Nos. 5255-83, 18586-83.
United States Tax Court
T.C. Memo 1984-659; 1984 Tax Ct. Memo LEXIS 12; 49 T.C.M. (CCH) 347; T.C.M. (RIA) 84659; December 20, 1984. Richard L. Stradley, for the petitioners. Peter R. Hochman, for the respondent. FAY MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Sec. 6653(a) [1]
Year
Deficiency
Addition to Tax
1979
$3,283
$164
1980
3,387
169
1981
8,836
192
The issues are (1) whether petitioners are entitled to deductions under section 170 for amounts claimed to have been contributed to various purportedly religious and charitable organizations, (2) whether petitioners are liable for additions to tax under section 6653(a), and (3) whether petitioners *14 are liable for damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Robert D. (Robert) and Barbara J. (Barbara) Abercrombie, resided in Anchorage, Alaska, when the petitions were filed in these consolidated cases. During the years in issue Robert was employed by the State of Alaska on a full time basis as the operator of a diagnostic and treatment program for juvenile delinquents. He earned wages totaling $27,954, $30,121, and $32,689 for 1979, 1980, and 1981, respectively. In January 1979 petitioners formed a chapter of the Universal Life Church, Inc., designated as Charter No. 28333, which they referred to as The Living Church (herein "ULC Charter No. 28333"). The address of ULC Charter No. 28333 is the same as petitioners' home address where they have resided for seven years. Robert, Barbara and Douglas Brown (Brown) comprised the Board of Directors of ULC Charter No. 28333 and, in addition, Robert acted as pastor, Brown was elected secretary, and Barbara was elected treasurer. Petitioners established a checking account with the Peoples Bank and Trust in the name of The Living Church (referred *15 to herein as the "ULC account") and maintained sole signatory control over that account during 1979, 1980, and 1981. Petitioners used funds from that account during 1979 and 1980 to pay various expenses including mortgage payments on their home, telephone and other utility bills, and also for food and automobile expenses. During the years in issue, petitioners donated articles of clothing and household items and they also assert that they made cash contributions to various organizations. On their tax returns for 1979, 1980, and 1981, petitioners claimed charitable contribution deductions of $14,743, $15,244, and $16,477, respectively. In his notice of deficiency, respondent disallowed the deductions and asserted additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). OPINION The first issue is whether petitioners are entitled to any deductions under section 170. Section 170(a) allows as a deduction any charitable contribution which is made during the taxable year. The term "charitable contribution" is defined in section 170(c) as follows: (c) Charitable Contribution Defined.--For purposes of this section, the *16 term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) * * * (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * The burden of proving entitlement to a deduction is on the petitioner. ; Rule 142(a). Thus, petitioners must show that all requirements of section 170 have been satisfied. Petitioners assert that they are entitled to charitable contribution deductions for purported donations to ULC Charter No. 28333 made primarily by means of deposits to the ULC account. Section 170 requires first that petitioners prove that they made the charitable contribution for which they seek a deduction. The term "charitable contribution" as it is used generally in section 170 is largely synonymous with the term "gift." ; , *17 affd. . It is well established that where taxpayers retain dominion and control over funds, as petitioners did by means of their signatory power over the ULC account, no charitable contribution or gift will be considered to have been made. See e.g., ; , and cases cited therein, on appeal (9th Cir., June 25, 1984). Thus, petitioners' retained control over the funds deposited to the ULC account precludes a finding that they actually made charitable contributions to ULC Charter No. 28333. Moreover, in order for contributions to be deductible under section 170 an organization must be both organized and operated exclusively for exempt purposes. Sec. 170 (c)(2)(B). In support of their contention that ULC Charter No. 28333 was organized and operated exclusively for exempt purposes, petitioners introduced into evidence an undated typed document entitled "Church Loyalty Emphasis" which purported to outline "the five points that tell who we Disciples [of the Living Church of the ULC] are." Other evidence on *18 this point consisted of petitioners' own representations that they had organized and continue to operate their church solely to enable them to help people in need, and the testimony of one person who stated that he had attended church meetings at petitioners' home. We find that the evidence presented by petitioners was insufficient for us to conclude that ULC Charter No. 28333 was organized and operated exclusively for exempt purposes. Finally, in order to qualify under section 170, it must be established that no part of the net earnings of the religious or charitable organization inures to the benefit of any private individual. Sec. 170(c)(2)(C). This Court has construed section 170(c)(2)(C) to prohibit the inurement of even a slight benefit to private individuals. See , and cases cited therein, affd. without published opinion . It is undisputed that during 1979 and 1980 petitioners used funds from the ULC account for mortgage payments on their home, utility bills, food, and automobile expenses. Thus, it is clear that at least some of these expenditures benefited *19 petitioners. Since petitioners introduced no evidence with respect to the ULC account for 1981, [2] we conclude that petitioners have failed to establish that no part of the net earnings of ULC Charter No. 28333 inured to the benefit of any private individual. Based upon the foregoing, we conclude that petitioners have failed to meet their burden of proof with respect to charitable contribution deductions for amounts purportedly donated to ULC Charter No. 28333 and, thus, are not entitled to any deduction therefor. [3]
*20 Petitioners also claim entitlement to charitable contribution deductions for cash contributions and for the claimed value of used clothing and household items allegedly donated to various social welfare agencies and to an organization denominated the First Christian Church. Where a charitable contribution is made in property other than money, section 170 allows a deduction in the amount of the fair market value of the property at the time of the contribution. See. 1.170A-1(c)(1), Income Tax Regs. Petitioners bear the burden of proving both the fact that contributions were made and the fair market value of the contributed property. Rule 142(a); , affd. . First, petitioners claim a $200 deduction for the estimated fair market value of used clothing donated to the State of Alaska-Department of Health and Social Services. To substantiate their deduction petitioners introduced into evidence a typed statement from that agency listing the donated items. In addition, Barbara testified that she estimated the total value of those items as $200 and that she had noted that *21 valuation on the receipt. Petitioners provided only a total valuation for the donated property and did not value each item separately, nor indicate the basis upon which value was determined. Although we believe that petitioners donated the articles listed, the evidence presented is insufficient to establish the fair market value of that property at $200. Using our best judgment, we find that the fair market value of the donated property was $100. Thus, petitioners are entitled to a deduction in that amount. ; Petitioners also claim deductions for the estimated fair market value of various articles of clothing and household items donated to the Salvation Army. To substantiate those deductions, they submitted into evidence two receipts from that organization. One receipt, dated August 1, 1979, listed the donated articles and bore a handwritten notation of "$100" which Barbara testified was her own estimate of the value of the donated items. The other receipt, dated May 8, 1979, also listed certain donated articles but did not indicate their value. Barbara's *22 testimony that the value of the items listed on the May receipt was between $150 and $200, or possibly less, was vague and unconvincing. Petitioners, therefore, have failed to prove the value of these contributions. Using our best judgment, we find that the fair market value of the property listed on the August and May receipts was $50 and $75, respectively. Thus, petitioners are entitled to deductions in those amounts. ;
Petitioners also claim deductions for the value of various articles and for cash purportedly contributed to the First Christian Church. Since petitioners introduced no evidence that the requirements of section 170 have been met with respect to that organization (see sec. 170(c)(2)), we find that they are not entitled to any deductions for contributions purportedly made thereto. [4]
*23 The next issue is whether petitioners are liable for additions to tax pursuant to section 6653(a). Section 6653(a) provides that if any part of the underpayment is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment. Petitioners bear the burden of proof on this issue. ; . The evidence pertaining to this issue consisted of Barbara's testimony that she "felt it was proper" to claim deduction for petitioners' so-called charitable contributions and that consideration of the resultant tax advantages played no part in petitioners' decision to establish a church. Petitioners impressed this Court as reasonably intelligent and well-educated individuals who could not have sincerely believed that they could claim charitable deductions for funds which they deposited to a bank account in the name of the church that they had established but over which they, nevertheless, retained dominion and control. Thus, we find that petitioners have failed to satisfy *24 their burden of proving that no part of the underpayment was caused by negligence or intentional disregard of the revenue laws. We therefore sustain respondent's determination with respect to the imposition of the additions under section 6653(a). Finally, we must decide whether damages should be awarded to the United States under section 6673. Section 6673 provides, as to cases commenced after December 31, 1982, [5] that the Court may award damages to the United States of up to $5,000 whenever it appears that proceedings have been instituted or maintained primarily for delay or that the taxpayer's position is frivolous or groundless. We have considered all the facts presented in the instant case and, in our discretion, we have determined that damages pursuant to section 6673 will not be awarded. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On May 30, 1984, this Court ordered petitioners to produce by June 13, 1984, all records pertaining to the ULC account for 1981. In disregard of that order, petitioners failed to produce those records until the evening of June 20, 1984, the day before trial. This Court granted respondent's motion and imposed sanctions prohibiting the introduction into evidence of records concerning the 1981 ULC account.↩
3. Petitioners argue alternatively that they are entitled to charitable contribution deductions for amounts allegedly donated "for the use of" the ULC (see sec. 170(c)) and rely upon the testimony of Bishop Robert E. Imbeau, Vice-President of the ULC, to support that contention. However, Bishop Imbeau's testimony was nonspecific and conclusory and we therefore accord it no weight. In any event, as discussed above, petitioners have failed to prove that any contributions or gifts were, in fact, made by them. Moreover, even if petitioners had proved that they had made contributions, the evidence presented herein is insufficient to establish that such contributions were made "for the use of" the ULC.↩
4. Petitioners' counsel failed to stipulate with respondent that the First Christian Church is an organization which qualifies under sec. 170. Since their counsel also failed to introduce any evidence at trial with respect to this question, we are left with no alternative but to deny all deductions for contributions purportedly made to The First Christian Church. Similarly, although at trial Robert testified that petitioners made several cash donations to charitable organizations of the type that solicit door to door, no facts were stipulated nor was evidence introduced to prove the amount of these donations. We must, therefore, find that petitioners have failed to meet their burden of proof and, accordingly, they are entitled to no deduction. We note that petitioners' counsel during the same trial session represented several other taxpayers in cases involving similar issues. In those cases too, he failed to stipulate facts as required by the Tax Court Rules of Practice and Procedure and failed to later introduce any evidence to enable his clients to prove that they were entitled to certain deductions.↩
5. Petitions in these consolidated cases were filed on March 11, 1983, and July 6, 1983.↩